# Wager *versus* Chew.

1. Where real estate subject to a mortgage was owned by several persons, and the interest of one of the owners was sold at sheriff's sale, the purchaser is not thereby personally chargeable with a proportion of the mortgage debt, to one of the original owners who paid it after the sale, in the absence of proof that he was permitted to become the purchaser on the condition of his assuming such responsibility.

2. A was the owner of real estate subject to a mortgage for $10,000. He sold the said real estate for the use of ten persons; but the conveyance was made to *two* of them, subject to the said mortgage. The two grantees executed to the vendor a bond and mortgage on the premises for $5000, a part of the purchase-money. Afterwards, a partition was made, between the ten original purchasers, of the said property, and of other real estate purchased by them; and the property which was conveyed to the said two persons was agreed to be conveyed to them and one other, as tenants in common; the conveyance being subject to the payment of *the ten thousand dollar mortgage only*. Subsequently, the third grantee sold the one-half of his interest in the whole property purchased to another, who afterwards became the purchaser at sheriff's sale, of the title of one of the two original grantees; the conveyance being *subject to two mortgages of* $15,000 : *Held,* that the purchaser at sheriff's sale was not personally bound for the payment of a proportionate part of the mortgage debt of $5000 to one of his co-tenants, who had executed the bond and mortgage, and who satisfied the same, after the sheriff's sale under the first mortgage.

3. The mere declarations of the said purchaser at sheriff's sale, made either before or after the said sale, that he was bound to pay part of the said mortgage debt, are too slight to create such a liability, without proof of consideration for the promise, and especially if made after his interest in the property had ceased, by reason of a sale of the same on the first mortgage.

4. To contradict a deed by showing a mistake in the scrivener who wrote it, evidence of what did not take place at or about the time of the transaction, or of which it did not appear that the person to be affected was cognisant, is not admissible.

5. An agreement in a receipt for the deed, that errors of calculation, *or the like*, in the deed, may be corrected : *Held,* to have been designed to cover only miscalculations as to the amount of the liens mentioned in the deeds, and not to remedy an important omission in the deed.

6. A proposition by a co-tenant of premises bound by a mortgage which existed upon them *before* he acquired an interest therein, made to the assignee of the mortgagee, asking forbearance, and proposing to become liable for the

[Wager *v.* Chew.]

debt, if rejected by the creditor, creates no liability on the part of the co-tenant to the creditor, and is not evidence of any liability by him to the mortgagor, without proof of consideration for making the same.

7. A bill of particulars is not amendable without leave of the court.

8. It is not error for the court, during the trial of the cause, to refuse leave to amend the declaration, so as to introduce a new cause of action.

Error to the District Court, *Philadelphia.*

This was an amicable action on the case, between Peter Wager and Benjamin Chew, executor, &c. of Samuel Chew, deceased, and entered to March term 1842. On the trial, the plaintiff claimed the one-third of a bond and mortgage, with interest thereon, executed by Peter Wager and Jonathan K. Hassinger to Thomas Weaver, for the sum of $5000, and also a balance to plaintiff on book account. The circumstances under which the first alleged liability arose, were as follow :—

On the 21st of April, 1836, the plaintiff in error, together with William Badger, Jonathan K. Hassinger, Henry R. Campbell, Thomas Weaver, Abraham Okie, Andrew D. Cash, Benjamin S. Bonsall, Jacob Heyberger, and John Miles, purchased sundry lots of ground, subject to incumbrances, situate in Ninth street, Green street, Washington street, Wallace street, and Eighth street, in the district of Spring Garden, in the county of Philadelphia. This property was *all* subject to incumbrances; and, for the purpose of more convenient partition, the titles to the respective lots purchased were made to different persons, consisting of the ten above mentioned. Afterwards, to effectuate the partition among all the parties in interest, they joined in a conveyance of all the lots purchased, to George W. Heyberger, in trust, for that purpose. In the conveyance to Heyberger, which was dated 22d November, 1838, the lot of ground on the corner of Ninth and Green streets was stated to be subject to the payment of the mortgage debt of $10,000, with interest, &c. unto James Paul—no mention was made of any other mortgage upon it. Chew was not a party to this deed. In pursuance of the deed of trust, a partition was agreed upon and made. In the partition, the lot, together with the improvements thereon erected, situate *at the north-west corner of Ninth and Green streets*, was, *inter alia*, conveyed by Heyberger *to Peter Wager, Jonathan K. Hassinger, and John Miles,* their heirs and assigns, subject to the mortgage debt of $10,000 to Paul; but no mention was made of its being subject to the $5000 mortgage to Weaver. *Shortly after the purchase of the several properties* aforesaid, by the ten gentlemen above named, Samuel Chew, (since deceased, and whose executor was defendant in error,) became the purchaser of the one undivided moiety of the interest of *John Miles in the whole.* The encumbrances which, at the time of his purchase, existed against the lot *at the north-west corner of Ninth and Green streets,* which

[Wager *v.* Chew.]

had been allotted to Wager, Hassinger, and Miles, *consisted of a mortgage to James Paul of* $10,000, to which the lot was subject at the time of the purchase, *and a mortgage (which is the one in question)* executed by Peter Wager and Jonathan K. Hassinger, in whose names the title was made to *Thomas Weaver*, of whom the lot was purchased for $5000, *it being for a part of the purchase-money*, the remainder thereof, to wit, $10,000, having been paid in cash. Afterwards, to wit, *after the partition was had*, Jonathan K. Hassinger, one of the three persons above named, to whom the said lot was conveyed in partition, became unfortunate in his business and stopped payment. *A judgment* was obtained against him, and his one-third undivided interest in the lot in question, as tenant in common with the other two, was sold at a sheriff's sale, under an execution issued to September term 1839, upon said judgment. . The sheriff's deed conveyed the property to Chew, *subject to two mortgages of fifteen thousand dollars, &c.* Samuel Chew became the purchaser at sheriff's sale, for $55; paid the purchase-money, and the sheriff executed to him a deed-poll for the same. Deed-poll to Chew acknowledged on 9th November, 1839. Of the existence of these mortgages, Mr. Chew had full knowledge; and it was alleged that at and before the purchase by him, he promised to be accountable, in the event of his becoming the purchaser, for his proportionate share of the incumbrances which existed against the said lot, viz. in proportion to the interest acquired by him under the sheriff's sale.

*After* Mr. Chew became the purchaser as aforesaid, the heirs of James Paul, being desirous of collecting their mortgage of $10,000, issued a *scire facias* thereon, obtained a judgment, and issued a *levari facias* thereon, under which the property in question was sold for $11,200, to Henry S. Berrill. Previous to, and on the day of the sale, Berrill entered into an agreement with the. said Peter Wager, Samuel Chew, and John Miles, to purchase the said lot in question, and some other property adjoining thereto, and which was held by them in like manner as tenants in common, for the price or sum of $13,000. The lot in question brought, as above stated, $11,200, a sum not quite sufficient to cover the amount due upon Paul's mortgage, thus leaving the mortgage of $5000 to Weaver, the one in question, entirely unsatisfied. The sale to Berrill was on *plu. lev. fac.* to March term 1841. Weaver had assigned his mortgage, together with the *bond* and warrant of attorney to confess judgment, for a valuable consideration, to the Mechanics and Tradesmen's Loan Company of Philadelphia. The company were anxious to realize their money; and, to enforce its payment, entered a judgment upon the bond; the effect of which was to make it a lien against all the separate real estate of Wager. They urged Wager for payment. In this exigency, he called upon Chew to contribute his proportionate part, in pursuance of his

[Wager *v.* Chew.]

agreement with him to that effect.   Chew solicited time.   He did
not refuse to pay the amount which he was called upon to contri-
bute, in terms, but alleged that there was a latent incumbrance
outstanding and unsatisfied, against the property in question, of
$7000, of which he had no knowledge at the time he became the
purchaser of Hassinger's interest; and that, until that incum-
brance was removed, he would not respond to Wager's demand for
his proportionate share of the said $5000 mortgage.   He stated
that, that being removed, he would pay his one-third part thereof.
That incumbrance was, after much difficulty, removed, and he was
called upon to redeem his promise.   In the mean time, the heirs
of Paul had sold the property under their *levari facias*.   The spe-
culation had proved a ruinous one.   The Loan Company pressed
for payment of their judgment; an execution was issued against
Wager, and Wager was left to raise the whole amount of the mort-
gage, together with the interest and costs which had accrued
thereon.   He satisfied the said judgment; and this action was
brought to recover the one-third part thereof.   This constituted
the *chief* part of the claim for which suit was brought; the *remain-
der* consisted of a claim for a balance due on a book account.

The narr. stated an indebtedness in the sum of ten thousand
dollars for money lent by plaintiff to Samuel Chew; for money
paid for his use; for money received by Chew for use of plaintiff;
and in the same sum, which was found to be due upon an account
stated; and averring a promise by Chew to pay.

To maintain his claim, plaintiff gave in evidence the agreement
signed by the ten persons, dated April 21, 1836, by which they
severally agreed to pay, on the 1st day of May following, their re-
spective portions of one-tenth each, for the several lots of ground
and improvements purchased on their account, the conveyances to
be made as may afterwards be agreed on.

Also the bond of Wager and Hassinger to Weaver, dated 2d
May, 1836, for the payment of $5000, secured by mortgage; the
said bond and mortgage being for the purchase-money of a part of
the property, to which the agreement above-mentioned referred.
The mortgage was assigned in August 1839 to the Mechanics
and Tradesmen's Loan Company, Miles being a witness to the as-
signment.   The assignment was recorded on 23d December, 1839.

The mortgage was assigned on 22d June, 1841, by the company
to Richard Hall.   Assignment recorded on 1st July 1841.   Judg-
ment on the mortgage bond was entered on 21st December, 1839.

And the plaintiff further offered in evidence an agreement of
Samuel Chew and John Miles, dated August 1839, as follows, to
wit:—

Whereas, Peter Wager and J. K. Hassinger executed a bond
and mortgage, to secure the payment of $5000, being part of the
purchase-money of certain lots on Ninth street, north of Green street,

[Wager *v.* Chew.]

in which John Miles and S. Chew are in part interested, and the said bond and mortgage have been assigned by Thomas Weaver to the Tradesmen and Mechanics' Loan Company, to secure the payment of $4000; and it has been agreed by the parties that the debt so due to the Tradesmen and Mechanics' Loan Company shall not be required to be paid until the full expiration of nine months from the date of the resolution of the board of directors of the said company, in the said behalf: now, it is hereby witnessed, that the said John Miles, and S. Chew, do stipulate and agree with Peter Wager, to pay and contribute to the one-half of whatever moneys he shall be required and obliged to pay to the said Tradesmen and Mechanics' Loan Company, or their assignees, by reason of the premises, beyond the money produced by the sale of the said lots, one-tenth part of the lots belonging to J. Miles and S. Chew, and one-tenth to P. Wager.

(Signed)    JOHN MILES,
August 1839.    S. CHEW.

The Loan Company did not agree to *forbear*, as suggested in the paper, and it was alleged by the counsel for defendant in error that, therefore, Miles and Chew were not bound by the terms of the paper.

And the said plaintiff further offered in evidence an indenture, dated the 22d November, 1838, between Peter Wager, Jonathan K. Hassinger, and Andrew D. Cash, trustees, of the first part, and sundry other persons therein named, of the second, third, fourth, and fifth parts, together with the endorsements, the same being a conveyance of all the property in question unto George W. Heyberger, for the sake of making partition, and containing, among other things, the following covenant, to wit:—

"And the said parties hereto of the first, second, third, and fourth parts, and each of them for himself and herself separate and apart, and for his and her respective heirs, executors, and administrators only, and not either of them for the acts and deeds of the other or others of them, do hereby severally and respectively, covenant, promise, grant, and agree to and with the said George W. Heyberger, party hereto of the fifth part, his heirs and assigns, that they, the said parties of the first, second, third, and fourth parts, either as trustees aforesaid or in any other capacity or otherwise howsoever, have not nor neither of them hath at any time or times heretofore, made, done, committed, or executed, or permitted, or suffered any act, deed, matter, or thing whatsoever, whereby or wherewith or by any reason or means whereof the said hereby granted premises, or any part or parcel thereof, are, is, can, shall, or may be anyways impeached, prejudiced or encumbered in title, interest, charge, estate, or otherwise howsoever; and further, that they, the said parties hereto, of the first, second, third, and

fourth parts, and their heirs respectively, all and singular, the said hereby granted premises with their and every of their appurtenances, unto the said George W. Heyberger, party of the fifth part hereto—his heirs and assigns, against themselves, the said parties hereto of the first, second, third, and fourth parts, and each and every of them and their heirs respectively, and against all and every other person and persons whomsoever lawfully claiming or to claim by, from, or under them, or any or either of them, or under the said recited deed of trust or otherwise, shall and will warrant and for ever defend by these presents."

And the plaintiff further offered in evidence, certain articles of agreement acknowledged the 24th day of December, 1839, between George W. Heyberger, of the one part, and Thomas Weaver, Jacob Heyberger, Peter Wager, *Samuel Chew*, sheriff's vendee of Jonathan K. Hassinger's undivided share, John Miles, A. D. Cash, Wm. Badger and others, containing, *inter alia*, the following covenant, to wit :—

"Now, this agreement further witnesseth, that it is understood and agreed that division of the said estate shall be made in the manner hereinafter provided for, and that the said George W. Heyberger be authorized to make, execute, and deliver full and sufficient deeds in fee simple to the respective parties hereto, and for the separate lots to them severally assigned, *and subject to the encumbrances there specified,* as follows."

Then follows a description of the lot in question, with certain of the encumbrances, but an omission (alleged on part of plaintiff to have happened inadvertently) to state the $5000 mortgage for a portion of which this suit is brought : the encumbrances upon all the other lots in said partition having been particularly set forth. The lot in question, upon which the said mortgage of $5000 existed, being to be conveyed to Peter Wager, John Miles, and Jonathan K. Hassinger, and unto their heirs and assigns ; said agreement also contained, *inter alia*, the following covenant, to wit :—

"And the said parties of the second part do hereby covenant and agree to accept and receive the said deeds herein next before provided, to be severally made to them, in full of all and every interest, share or claim by them, or either or any of them in the said property, so as before held by the said George W. Heyberger in trust, and for the purpose of the partition hereinbefore provided to be made."

Then followed a covenant on the part of the parties of the second part, releasing the said George W. Heyberger and indemnifying him against all claims, &c.

The plaintiff further offered in evidence, a letter of Samuel Chew to the President and Directors of the Mechanics and Tradesmen's Insurance Company, dated the 27th day of November, 1840, in which he requested "a reasonable delay to provide the $5100."

[Wager *v.* Chew.]

Also a deed from Heyberger to Wager, Miles, and Chew, dated 29th November, 1839, for the lot on the corner of Green and Ninth streets and other premises, which deed contained a recital of the lots therein, and the encumbrances thereon, without mentioning the mortgage of $5000.

Also a receipt of Wager, Chew, and others, for certain deeds to Heyberger, dated the 17th April, 1840, as follows :—

" Received of George W. Heyberger, the deeds for the several lots respectively to us, from the joint estate, corner of Ninth and Green streets, and in accordance with the agreement by us, severally executed, and in full compliance therewith ; said delivery of deeds being made and accepted in pursuance of said agreement, and also upon the following terms and conditions :—

1st. That the accounts between the parties shall be unaffected thereby.

2d. *That all errors of calculation or the like in said deeds, shall and may be corrected at any time hereafter.*

Signed,      PETER WAGER,

S. CHEW,

JOHN MILES, and others."

Also the mortgage of Weaver to Paul, dated 26th March, 1832, subject to which the property purchased from Weaver, and conveyed by Weaver to Wager and Hassinger, was bought.

Also proved by Dougherty, who was secretary of the Loan Company in 1841, that Chew, in 1841, said, in relation to the $5000 bond and mortgage held by the Loan Company, that Wager, Miles, and himself were jointly interested in the transaction. There was an anxiety to postpone payment. He said that he was bound to pay a portion along with Wager and Miles. I understood an equal portion. A sacrifice of the property *had been made* at sheriff's sale, and these parties were bound to pay the difference.

Mr. Badger testified, that Chew told him several times that he would pay his proportion of the $5000 mortgage, as soon as another mortgage was removed. * * * He said, in honor and conscience, he regarded himself as bound to pay the one-third of. that mortgage. The only objection he made was inability. At the time Chew purchased, he knew of the five thousand dollars, and of the terms of division.

The plaintiff offered a certain paper, dated August 1839, signed S. Chew and John Miles, to show an assumption by the defendant to pay the sum in controversy ; to which defendant's counsel objected, 1st. Because it did not support the claim set out in the bill of particulars, which bill of particulars is as follows :—

1. The plaintiff alleges that he purchased in his own name, but on joint account with S. Chew and John Miles, certain real estate, situate at Ninth and Green streets, (known as Berrill's Tavern,)

[Wager *v.* Chew.]

from T. Mason, (say one-third each for whatever the respective portions may be.)

2. That as part of purchase-money, he executed to said Mason a bond and mortgage thereon for $5000.

3. That he had from his own money been compelled to pay the whole of said encumbrance of $5000 and interest.

4. He, in this action, asks to recover from estate of S. Chew, late joint owner, his proportionate part of said money so paid.

2d. The paper shows a joint liability.

3d. Because the objection contained in the said paper of August 1839, was an obligation to the Loan Company.

Whereupon, the plaintiff's counsel moved to be permitted to *amend* the bill of particulars, which the judge refused to permit. The *declaration* was amended, and the paper was admitted.

Plaintiff offered to show by Wm. Badger, Esq., the precise nature of the interest of Hassinger, which was purchased by Samuel Chew on the 7th October, 1839; which was *overruled,* and exception taken.

Plaintiff's counsel offered two papers, No. 1 and 2: No. 1 contained a specification of the real estate purchased, and its cost, and a proposition as to its division; and No. 2 contained a reference to the property and to encumbrances.

The papers were overruled.

Plaintiff's counsel offered in evidence a book account of plaintiff against Chew, stated in his *amended* bill of particulars; such amendment, however, was not made by leave of court, though notice of the amended bill was given to the defendant's counsel in October 1847. The evidence was overruled.

Plaintiff's counsel then moved for leave to amend the narr. by adding a count for the particular goods sold and delivered, which were mentioned in the last offer to amend the bill of particulars; but the judge *overruled* the motion, and exception was taken.

Plaintiff's counsel having closed his evidence, the judge, on motion of defendant's counsel, ordered *a nonsuit.*

And thereupon, the plaintiff excepted to the aforesaid charge and opinion of the court; and inasmuch as they do not appear of record, the plaintiff tendered this bill of exceptions, and requested the seals of the judges aforesaid, according to the form of the statute, and thereupon the judges put their seals thereto.

To recapitulate:—The mortgage of Weaver to Paul, was dated 26th March, 1832.

Agreement of the ten to purchase in company, dated 21st April, 1836.

Purchase by Chew from Miles of half his interest.

The mortgage and bond of Wager and Hassinger to Weaver, dated 2d May, 1836. This bond and mortgage were assigned to the Loan Company on 29th August, 1839. They were assigned by the Loan

[Wager *v.* Chew.]

Company to Richard Hall, on 22d June, 1841. Judgment had been entered on the bond on 21st December, 1839.

Conveyance to Heyberger in trust, dated 22d November, 1838. Chew was not a party to it.

Articles of agreement with Heyberger, dated the      day of      1839, acknowledged by Chew and certain others, as per certificate of alderman, dated 24th December, 1839.

Proposition to Loan Company by Miles and Chew, dated August 1839.

Sheriff's deed to Chew for the interest of Hassinger, sold for $55, acknowledged 9th November, 1839.

Conveyance by Heyberger to Wager, Chew, and Miles, dated 29th November, 1839, acknowledged by Heyberger 7th December, 1839.

Sale on mortgage to Paul, viz. the first mortgage, made on *lev. fa.* to March term 1841.

It was assigned for error :

That the judge erred, 1st. In rejecting all and each portion of the facts offered to be proved by William Badger.

2d. In rejecting the papers marked 1 and 2, and referred to in the testimony of William Badger.

3d. In rejecting the evidence of the book account of the plaintiff.

4th. In directing a nonsuit.

The case was argued by *Badger* and *Randall*, for Wager, plaintiff in error.—1st. It was urged, that the testimony demonstrates a positive promise or undertaking on the part of Mr. Chew to be responsible, or accountable to Mr. Wager, for his proportionate part of the encumbrances existing against the share which had been allotted to Messrs. Wager, Hassinger, and Miles, by the terms of partition.

2d. If there was not an express undertaking, then it is respectfully submitted there was an implied promise arising from the very nature of the case and Mr. Chew's connection with it, which would render it equally obligatory on him to pay his proportionate share of the encumbrance whenever the necessities of the case should require him so to do.

As to the 1st and 2d exceptions. The object of the offer was to show that there was a mistake in the agreement of partition, which consisted in the omission to mention the $5000 mortgage as one of the encumbrances against the property at the corner of Ninth and Green streets. This omission was taken advantage of by Chew. Contemporaneous with the execution of the agreement of partition, a receipt was signed by Chew, with others interested, which contained a provision " That all errors of calculation, *or the like*, in said deeds, *shall, and may be corrected at any time hereafter.*"

3d. The bill of particulars was rejected, because filed without leave of court.   If given in time, so as not to be obnoxious to the charge of working injury to the opposite party, the court ought not to reject it, unless for deficiency in substance.   If surprise had been alleged, the case might have been continued.   Considerable latitude is allowable in the matter of bills of particulars, the object of which is the attainment of justice.   A bill of particulars may be amended: 3 *Green* 178 ; 5 *Pike* 248.

Where an item in a bill was, " To 12,000 yards of hard-pan excavation, $36,000," the plaintiff was not held to 30 cents per yard, but was allowed to recover beyond that price; the defendant having come prepared to contest the value of the work, thereby showing that he had not been misled : Dubois *vs.* Del. Ins. Co. 12 *Wend.* 334.   Ibbett *vs.* Leaver, 16 *Meeson & Welsby* 770, decides, that if the defendant does not object to the bill of particulars delivered to him, the plaintiff has a right to consider that he has accepted it.

*C. Ingersoll,* for defendant in error.—The paper, dated August 1839, was tendered by Miles & Chew *to the Loan Company ;* it was rejected, and there was an end of it.   When this paper was placed before the judge, he admitted it in evidence ; but afterwards on the motion for a nonsuit, he threw it out of consideration.   As an agreement, it was without consideration.   In order to enable Wager to recover on it, he must show consideration for it outside the paper, for it shows none.   If the paper contained a contract to be liable to the plaintiff, he should have sued on it.   Not having done so, he cannot give it in evidence to help him out with another claim.

The conversations with Dougherty and Badger show that Chew was anxious to see the property in which he was interested relieved of the mortgage, but they do not establish a liability.   They were with casual third persons; the plaintiff was not present at them. They were not made upon valuable consideration.

The deeds exclude Chew from a liability for the $5000 mortgage. By the operation of the division he seems to have acquired a right to hold, (*quoad* Wager and the rest of the ten,) clear of that mortgage.   All the deeds so stipulate.

The plaintiff sues for contribution, for money paid to the defendant's use.   But he has paid no money, nor done any act for his use.   The property had been sold on a prior mortgage to Paul. After this sale, the second mortgage of Wager and Hassinger had no legal existence.   After this sale, Wager paid the mortgage bond for which he was bound.   How was this payment for the use or benefit of Chew, as his interest in the land had gone by the sheriff's sale on the first mortgage ?

As to the bills of particulars.—Bills of particulars are regarded as incorporated with the narr. : 1 *Tidd's Practice* 645.   The plaintiff may amend, but only on leave : *id.* 644–5 ; 1 *Taunt.* 353.   The

[Wager *v.* Chew.]

new particulars introduced a new cause of action, not covered by the narr. or bill of particulars, and the items of it *are barred by the statute.*

The opinion of the court was delivered March .24, 1851, by

BELL, J.—Though, upon the trial, this controversy seems to have assumed an aspect somewhat complicated, involving a variety of facts, documentary and oral, it is, in truth, simple in its character, and may legitimately be confined within narrow bounds.

The question is whether Chew, as purchaser of Hassinger's interest, became personally liable to pay a portion of the bond and mortgage executed by Wager and Hassinger to Weaver ? . His prior connection with the speculation, as a purchaser from Miles, is introduced solely as evidencing his acquaintance with all the features of the transactions attending the acquisition of the several properties, and not as furnishing a substantive ground upon which a recovery can be had in this action.   In fact, we have no reliable account of the nature of Chew's association with Miles, or of the terms under which he acquired an interest in Miles's share of the houses and lots purchased by the adventurers.   He did not join in any of the deeds and agreements executed from time to time, as the associate of Miles, nor does he seem to have been formally recognised by the other parties, as one interested, until after he bought at sheriff's sale, and then only as the vendee of Hassinger's interest.   Accordingly, on the argument, any supposed claim recoverable against Chew, as the associate of Miles, was disclaimed as being recoverable in this suit.   Had it been otherwise, it is impossible to perceive how such a claim could be successfully pressed, in the absence of the information necessary to a full comprehension of the positions relatively occupied by Miles and Chew.   We are then to deal with the latter only in his capacity of buyer at the judicial sale, except so far as his connection with Miles may serve to elucidate his subsequent actions and declarations, or as it may serve as proof of imputed knowledge.

As purchaser of Hassinger's share of the joint estate, Chew undoubtedly took an interest in the property situate at the north-west corner of Ninth and Green streets, called lot No. 1 in the proceedings, subject to the mortgages held by Paul and Weaver, or their assigns, so far as the mortgages were concerned.   This would have resulted from the mere operation of law, unassisted by any stipulation in the sheriff's conveyance.   But if any regard be due to the language of the deeds executed by all the parties then having an interest, to George W. Heyberger, with a view to a partition of the common estate, of the articles of agreement of 1839, declaring the objects of that conveyance, and of the deed made by Heyberger to Wager, Miles, and Chew, for the very lot of ground from which springs this litigation, it was the intention of the parties that, as

among themselves, the grantees should hold that lot freed of every encumbrance, except the mortgage to secure the payment of $10,000 owned by Paul.   The first of these instruments sets out, with great and labored particularity, the several encumbrances to which the respective pieces of property named in it were to be considered as subject in the hands of the trustee, and twice names this lot as bound only for the payment of the Paul mortgage; the agreement, acknowledged more than eleven months afterwards, after reciting the deed to Heyberger, that it was made as a mode of facilitating partition, and that the parties had since agreed upon the method of partition, directs Heyberger as trustee, *inter alia*, to convey to Wager, Miles, and Hassinger, lot No. 1, as a portion of their purpart, *subject to the Paul mortgage*, after which it proceeds to direct the conveyance of the other purparts, specifically mentioning and describing the encumbrances to which they were subject; and the conveyance accordingly executed by Heyberger to Wager, Miles, and Chew, on the 29th of November, 1839, delivered in April 1840, passes the particular lot to the grantees, as tenants in common, subject only to the single mortgage just mentioned.   The agreement, which appears to have been prepared before the sale of Hassinger's interest, was not executed till afterwards, and was then sealed by Chew as sheriff's vendee of Hassinger's share, sold shortly before.   The execution of this paper was Chew's first formal act as the holder of that interest, and it was immediately followed by Heyberger's conveyance.   Looking to these instruments, as finally ascertaining the rights and liabilities of the parties, it seems impossible to avoid the conclusion that, though No. 1, conveyed to Wager, Miles, and Chew, was, in fact, encumbered by two mortgages in its relation to creditors, as between the grantees themselves it was to be deemed subject to but one, resting the burden of the other upon the personal responsibility of Wager and Hassinger, who had executed it, together with the accompanying bond. If this be so, the subsequent satisfaction of it, by the former party, was but in discharge of his obligation to do so in relief of his co-tenants, and, consequently, can furnish no pretence for calling upon any of them for contribution.

This result was perceived at the trial, and, therefore, with the view, as is now said, of modifying the instruments to which I have referred, by showing a mistaken omission to mention the second encumbrance held by Weaver, or his assigns, the plaintiff offered to prove the precise nature of Hassinger's interest, and to give in evidence two papers, said to have been used by the original parties when arranging the details of the partition, which show that lot No. 1 was to be taken subject to the two mortgages.   In the formal statement of this evidence, entered of record, it is not said the object was to reform the deeds.   If such was the design, it was most loosely and imperfectly expressed, and this, perhaps, was a

[Wager *v.* Chew.]

sufficient reason for not listening to it.    It did not proffer to show
any thing which took place at or about the time of the execution
of the papers, or any of them, and of which Chew was cognizant.
The language in which it is couched is very vague; but, if I appre-
hend it correctly, the offered proof was of conversations, under-
standings, and agreements between the original parties before
Chew's purchase from the sheriff, and to which he was not privy.
This was, obviously, inadmissible.    For aught the evidence dis-
closes, he never saw the writings numbered one and two, and,
although it is said that when he bought he knew of the $5000 lien,
and of the terms of the contemplated division, this, of itself, was
clearly impotent to work a very material alteration in the instru-
ments afterwards executed, and which, in this important particular,
are in perfect harmony with the elaborate deed of 1838.    The re-
jected evidence was, in no single feature, to be assimilated to the
kind of proof requisite for the correction of a writing.    The solemn
instruments executed by these parties must be accepted as expres-
sive of their final arrangements, and, in the present position of the
case, as superseding prior negotiations and parol agreements, even
as between the original parties.    This is the general rule, and I
see nothing to withdraw this case from its operation.    Indeed, it
steers so far wide of an exception, that it is not even proved Chew
was connected with the supposed prior arrangements and assented
to them as a purchaser at the judicial sale.

Nor is there any thing in the receipt given in April 1840, by
Wager, Chew, and Miles, to Heyberger, for the deed, competent to
work a different result.    " It stipulates that all errors of *calculation,
or the like,* in the said deeds, shall and may be corrected at any time
hereafter."    This language was, evidently, intended to cover mis-
calculations in ascertaining the amounts of the several items of
lien enumerated in the deeds; not to remedy the total omission of
one of primary importance.    It would be dangerous to permit it a
scope so wide as this.

But, after all, this question of evidence is of minor importance;
for, if the alleged mistake be conceded and corrected, it is not per-
ceived that the plaintiff would be in a better position as the case
now stands.    Had the deeds expressly subjected the lot in question
to the burden of the second mortgage, they would have worked no
other legal effect than to encumber the land in the hands of Chew,
as the purchaser of Hassinger's interest.    Such a stipulation would
not have substituted him as a party to the bond and mortgage, or
cast upon him the personal responsibility which attached to Has-
singer as obligor and mortgagor.    It would but have subjected
Chew's interest to answer for its proportion of the sum secured by
the second mortgage, in any future settlement among the co-tenants,
just as it was bound to answer for the first mortgage.    Were it
agreed, too, that, as the associate of Miles, Chew was fully aware

[Wager *v.* Chew.]

of Hassinger's personal liability, and even cognizant that this entered into the consideration of the parties then arranging for future partition, it would not put him into Hassinger's shoes for every purpose of obligation. Such a result would be produced only on proof that, by an arrangement with the other parties, he had been suffered to purchase at the sheriff's sale, on the condition of assuming Hassinger's personal liability, or under some similar consideration. But for this there is no pretence. The other parties were in no condition to dictate terms. The speculation had failed, and those concerned in it were embarrassed for means to meet their engagements. In less than a year after the sale to Chew, the mortgage held by Paul was sued out, and the encumbered lot sold to satisfy it. Immediately after, if not before, we find Wager, perhaps one of the wealthiest of the associates, pressed for the payment of his bond, and, after many delays, raising the money with difficulty. In short, every thing shows that, at the moment of Chew's purchase, coming ruin had frowned upon the enterprise, and threatened a disastrous termination. Under every concession, then, the most that can be said is, that when Chew became the purchaser, he took the property as between him and the other tenants, encumbered by the two mortgages, deriving no beneficial interest beyond the surplus value. This was the position in which the law placed him, and there is no fact established sufficient to change it. So far as he was concerned, as holder of Hassinger's interest, the land was, alone, pledged for payment. That failing, neither creditor nor co-tenant could call upon him for a farthing, and when lot No. 1 was afterwards actually sold for less than the amount of the first mortgage, Chew had no further interest in the subject. There was, consequently, nothing in his relation to the lot from which the law could deduce an implied undertaking to pay any portion of the judgment accompanying the Weaver mortgage.

Is there any evidence of an express agreement binding on his representatives? In answer to this question, we are referred to the several conversations detailed by the witnesses examined for the plaintiff. But it does not appear to us that these establish a contract. They were not held with the plaintiff, or any one representing him. They were addressed to third persons who, as agents of the creditor, were pressing for payment of Wager's bond. Before the sale, under the Paul mortgage, Chew said to Mr. Badger he would pay his proportion; that in honor and conscience he considered himself bound to pay one-third of the Weaver mortgage, and was willing to do so, but had not the means. As indicating a contract, these expressions are altogether deficient in time, place, circumstance, and the ground of the undertaking. If he thought himself bound to pay, it is clear he was mistaken, and no action arises from such mistaken concession. But from the form of phrase used, he probably distinguished between a merely honorable and a

[Wager *v.* Chew.]

legal obligation; and it is almost needless to say that the law possesses no means to enforce the former. The plaintiff was well aware that to withdraw it from this category, it was incumbent upon him to show some consideration moving to the undertaking. He has failed to do so, for, I repeat, knowledge of the prior arrangements by Chew, and even his assent to them as the associate of Miles, bound him not to personal responsibility as the sheriff's vendee. The conversations detailed by Mr. Dougherty were had after the sale made under the Paul mortgage, and, therefore, after Chew's interest had entirely ceased. They are, consequently, if possible, still more destitute of consideration than the prior declarations. There is, absolutely, nothing upon which to ground them.

It has not been urged upon us that the paper of August 1839, signed by Miles and Chew, creates a responsibility that can be enforced in this action. Had it been, several unanswerable objections present themselves. First, it has, of course, no reference to Chew's supposed liability, originating in his after purchase at sheriff's sale; and the object of this action is to enforce that supposed liability. Second, if it proposed a contract at all, it would seem to have been with the Tradesmen and Mechanics' Loan Company, the then holders of the Weaver mortgage, and from whence the consideration of forbearance had or was to proceed. Though, in strict terms, it stipulates with Wager, it is pretty manifest it was a proposal made to the Loan Company, to induce a wished for delay, which Miles and Chew had then an interest in procuring. No consideration is stated as proceeding from Wager, and no reason given why such an arrangement should be made for his sole benefit. On the other hand, we can easily understand why the two associates should be willing to purchase time, by offering to add their responsibility to the liability of Mr. Wager, upon which the company alone depended. But if it is to be regarded as a contract with Wager to assist him, at any future time, to pay the debt, it is, as the case stands, wholly without consideration. It is not shown that any, the least, moved from Wager to Miles and Chew, as the inducement of this undertaking. The existence of a consideration should not be left to mere conjecture, and the only consideration stated in the paper itself, proceeded from the corporation, the then holder of the debt.

Another objection is, that this paper, if it be operative at all, establishes a joint liability, and cannot be made the basis of a separate suit against Chew's personal representatives, the joint contractor, Miles, surviving.

As these and other answers to the paper, probably presented themselves to the notice of the plaintiff's counsel, it seems to have been introduced rather as one of the incidents attending the multiplied transactions of these parties, during a course of years, and

[Wager *v.* Chew.]

as explanatory of their relations, than as affording a distinct ground of suit ; and it was, accordingly, so treated here.

I cannot leave this part of the case without the observation that, after all, it is possible there was an undertaking, upon a sufficient consideration, by Chew, as purchaser of Hassinger's interest, to pay one-third the amount of the mortgage money. From his repeated professions of a willingness to do so, one is inclined to suspect such was the fact. But suspicion is not enough, and it is the misfortune of the plaintiff that he is unable to show the fact.

The second branch of the case, as presented here, originates in the rejection of the plaintiff's book account in the court below. Had the original narr. covered this cause of action, a bill of particulars need not have been voluntarily furnished. The account would have been admissible under the declaration alone. But, unfortunately, the plaintiff did not count for goods sold, and the offer to introduce it at the trial was an offer of a new cause of action, which came too late. The amended bill of particulars did not help the omission. Even conceding that, under a bill of particulars properly furnished, this item of claim might have been received, a bill cannot be amended, as it seems, without leave of the court, 1 *Tidd's Pr.* 644–645 ; 1 *Taunt.* 353, because it is regarded as part of the. narr. For myself, my inclination would be, liberally, to permit amendment, where no danger of injustice was incurred by it. In this instance, the court refused, no doubt, for sufficient reasons. We cannot say there was error in this.

Judgment affirmed.